Darrell Bellard v. State of Maryland, No. 72, September Term, 2016

**FIRST-DEGREE MURDER – LIFE IMPRISONMENT WITHOUT POSSIBILITY OF PAROLE – SENTENCING DETERMINATION – SENTENCING SCHEME – MD. CODE ANN., CRIM. LAW (2002, 2012 REPL. VOL., 2016 SUPP.) § 2-304 – CONSTITUTIONALITY –** Court of Appeals held that, under Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2016 Supp.) ("CR") § 2-304(a), where defendant is convicted of first-degree murder and State has given notice of intent to seek life imprisonment without possibility of parole, trial court, not jury, determines whether to sentence defendant to life imprisonment or life imprisonment without possibility of parole; stated otherwise, CR § 2-304 does not grant defendant who is convicted of first-degree murder right to have jury determine whether to impose sentence of life imprisonment without possibility of parole. Court of Appeals also held that Maryland's sentencing scheme for life imprisonment without possibility of parole does not violate United States Constitution or Maryland Declaration of Rights, and neither United States Constitution nor Maryland Declaration of Rights provides a defendant with right to have jury determine whether defendant should be sentenced to life imprisonment without possibility of parole; stated otherwise, both United States Constitution and Maryland Declaration of Rights permit sentence of life imprisonment without possibility of parole to be imposed in same manner as every other sentence except death penalty, which has been abolished in Maryland.

Circuit Court for Prince George's County
Case No. CT101239A

Argued: March 6, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 72

September Term, 2016

_____

DARRELL BELLARD

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: March 31, 2017

In 2013, Maryland repealed the death penalty. To effectuate the repeal of the death penalty and provisions related to the death penalty, the General Assembly repealed several statutes, and repealed and reenacted, with amendments, other statutes, including Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR (2012)") § 2-304(a), which previously governed the procedure for sentencing a defendant who was convicted of first-degree murder to life imprisonment or life imprisonment without the possibility of parole, where either the State did not give notice of intent to seek the death penalty, or the State gave such notice but the trial court or jury determined that the death penalty should not be imposed. See 2013 Md. Laws 2298-99 (Vol. III, Ch. 156, S.B. 276). The General Assembly amended CR (2012) § 2-304(a), effective October 1, 2013, by making the following deletions:

> (a) *In general.* — (1) If the State gave notice under § 2-203(1) of this title,[1] but did not give notice of intent to seek the death penalty under § 2-202(a)(1) of this title, the court shall conduct a separate sentencing proceeding as soon as practicable after the defendant is found guilty of murder in the first degree to determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life.
>
> (2) If the State gave notice under both §§ 2-202(a)(1) and 2-203(1) of this title, but the court or jury determines that the death sentence may not be imposed, that court or jury shall determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life.

---

[1]Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2016 Supp.) § 2-203(1) states:

A defendant found guilty of murder in the first degree may be sentenced to imprisonment for life without the possibility of parole only if[,] at least 30 days before trial, the State gave written notice to the defendant of the State's intention to seek a sentence of imprisonment for life without the possibility of parole[.]

2013 Md. Laws 2317, 2323 (Vol. III, Ch. 156, S.B. 276). As such, after the amendment, Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2016 Supp.) ("CR") § 2-304(a) provided and currently provides:

> (a) *In general.* — If the State gave notice under § 2-203(1) of this title, the court shall conduct a separate sentencing proceeding as soon as practicable after the defendant is found guilty of murder in the first degree to determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life.

The General Assembly did not amend the remainder of CR § 2-304, which provided, and continues to provide, as follows:

> (b) *Findings.* — (1) A determination by a jury to impose a sentence of imprisonment for life without the possibility of parole must be unanimous.
>
> (2) If the jury finds that a sentence of imprisonment for life without the possibility of parole shall be imposed, the court shall impose a sentence of imprisonment for life without the possibility of parole.
>
> (3) If, within a reasonable time, the jury is unable to agree to imposition of a sentence of imprisonment for life without the possibility of parole, the court shall impose a sentence of imprisonment for life.

As a result of the amendment, CR § 2-304(a) provides that a trial court shall conduct a sentencing proceeding to determine whether to sentence a defendant who is convicted of first-degree murder to life imprisonment without the possibility of parole, whereas CR § 2-304(b) refers to a jury determination as to a sentence of life imprisonment without the possibility of parole.

The General Assembly's amendment of CR (2012) § 2-304(a), without amending CR (2012) § 2-304(b), gives rise to the two issues that we must decide in this case: (I) whether a defendant who is convicted of first-degree murder has a right, under CR § 2-304,

to have a jury, rather than the trial court, determine whether to sentence the defendant to life imprisonment or life imprisonment without the possibility of parole; and, if not, (II) whether Maryland's sentencing scheme for life imprisonment without the possibility of parole is unconstitutional.

We answer these questions in the negative and hold that: (I) under CR § 2-304(a), where a defendant is convicted of first-degree murder and the State has given notice of an intent to seek life imprisonment without the possibility of parole, the trial court, not the jury, determines whether to sentence the defendant to life imprisonment or life imprisonment without the possibility of parole; stated otherwise, CR § 2-304 does not grant a defendant who is convicted of first-degree murder the right to have a jury determine whether to impose a sentence of life imprisonment without the possibility of parole; and (II) Maryland's sentencing scheme for life imprisonment without the possibility of parole does not violate the United States Constitution or the Maryland Declaration of Rights, and neither the United States Constitution nor the Maryland Declaration of Rights provides a defendant with a right to have a jury determine whether the defendant should be sentenced to life imprisonment without the possibility of parole; stated otherwise, both the United States Constitution and the Maryland Declaration of Rights permit a sentence of life imprisonment without the possibility of parole to be imposed in the same manner as every other sentence except the death penalty, which has been abolished in Maryland.

## BACKGROUND

Darrell Bellard ("Bellard"), Petitioner, was charged in the Circuit Court for Prince George's County ("the circuit court") with four counts of first-degree murder and related

offenses arising out of crimes which resulted in the deaths of two women and two children, all of whom had been shot in the head. In the early morning of August 6, 2010, Bellard was taken to a police station to be interviewed as a witness. As law enforcement officers gathered evidence throughout the day, they learned that Bellard was a drug dealer from Texas and that he had been mad at one of the victims; Bellard, thus, became a suspect. Bellard initially denied responsibility for the deaths of the four victims, but later confessed to the shootings.

On February 4, 2011, the State filed a notice of intent to seek the death penalty. Prior to the start of Bellard's trial, in 2013, the General Assembly passed Senate Bill 276, repealing the death penalty, and on May 2, 2013, the Governor of Maryland approved Senate Bill 276. See 2013 Md. Laws 2323 (Vol. III, Ch. 156, S.B. 276). The act was to take effect on October 1, 2013. See id.

On June 3, 2013, in response to the pending repeal of the death penalty, the State filed in the circuit court a "Notice to Withdraw Intent to Seek Death Penalty." On June 6, 2013, the State filed a "Notice of Intent to Seek Sentence of Imprisonment for Life without Possibility of Parole" as to all four counts of first-degree murder.[2]

---

[2]In any event, Section 4 of Chapter 156 of the 2013 Laws of Maryland provided:

> That in any case in which the State has properly filed notice that it intended to seek a sentence of death under § 2-202 of the Criminal Law Article in which a sentence has not been imposed, the notice of intention to seek a sentence of death shall be considered to have been withdrawn and it shall be deemed that the State properly filed notice under § 2-203 of the Criminal Law Article to seek a sentence of life imprisonment without the possibility of parole.

On March 5, 2014, Bellard filed a "Notice of Defendant's Election to be Tried by Jury and, if Convicted of First[-]Degree Murder, to be Sentenced by Jury." On March 31, 2014, Bellard filed a request for specific *voir dire* concerning life imprisonment without the possibility of parole—specifically, *voir dire* questions "relating to . . . prejudice, partiality, presupposition, and/or inability to follow the law with regard to the sentencing process." On April 4, 2014, Bellard filed a motion to strike the State's notice of intent to seek life imprisonment without the possibility of parole. In the motion to strike, Bellard contended that the amended version of CR § 2-304 requires a jury to decide whether to impose a sentence of life imprisonment without the possibility of parole, while Maryland Rule 4-342 requires a trial court to determine a defendant's sentence. According to Bellard, given the conflict between CR § 2-304 and Maryland Rule 4-342, it would be "impossible" to sentence him to life imprisonment without the possibility of parole "in a manner that complies with both the statute and the rule[.]" Bellard also argued that a sentence of life imprisonment without the possibility of parole would violate his rights under the United States Constitution and the Maryland Declaration of Rights.

On April 7, 2014, the State filed a motion to strike Bellard's notice of election to be sentenced by jury. In the motion to strike, the State contended that, in repealing the death penalty, the General Assembly did not intend to create a statutory right for a defendant to have a jury determine whether to impose a sentence of life imprisonment without the possibility of parole. According to the State, with the exception of the death penalty, a

2013 Md. Laws 2323 (Vol. III, Ch. 156, S.B. 276).

defendant has no right to be sentenced by a jury, and no statute confers such a right to a defendant, despite whatever language the General Assembly left in CR § 2-304. The State further argued that the Maryland Rules clearly provide that a trial court shall determine whether to impose a sentence of life imprisonment without the possibility of parole.

On April 7, 2014, the circuit court conducted a hearing, at which it heard argument on the motions to strike. At the hearing, the parties made the same arguments that they raised in the motions to strike, with Bellard's counsel contending, among other things, that amended CR § 2-304 provides for the right for a defendant to have a jury determine whether to impose life imprisonment without the possibility of parole. And, the State argued that the General Assembly's intent, as reflected by the plain language of CR § 2-304 and the legislative history of the bill repealing the death penalty, was solely to repeal the death penalty, not to create a new right to jury sentencing in cases in which the State seeks life imprisonment without the possibility of parole. At the conclusion of the hearing, the circuit court orally ruled from the bench, denying Bellard's motion to strike the State's notice and striking, or denying, Bellard's notice of election to be sentenced by a jury.

The case proceeded to trial, and a jury convicted Bellard of four counts of first-degree murder, four counts of use of a handgun in the commission of a felony or crime of violence, and three counts of conspiracy to commit murder. On June 27, 2014, the circuit court sentenced Bellard, in relevant part, to four consecutive sentences of life imprisonment

- 6 -

without the possibility of parole, one for each conviction for first-degree murder.[3]

On July 1, 2014, Bellard filed a request for a sentence review by a three-judge panel. On July 15, 2014, the circuit court issued an order directing a three-judge panel to consider Bellard's request. On September 2, 2014, on behalf of the three-judge panel, a judge of the panel issued an order denying the request without a hearing.

In the meantime, on July 9, 2014, Bellard noted an appeal. On August 31, 2016, in a reported opinion, the Court of Special Appeals vacated two of the three convictions and sentences for conspiracy to commit murder, and affirmed the circuit court's judgments in all other respects. See Bellard v. State, 229 Md. App. 312, 353, 145 A.3d 61, 86 (2016).[4] The Court of Special Appeals held, among other things, that CR § 2-304 does not give a defendant the right to have a jury determine whether the defendant should be sentenced to life imprisonment with the possibility of parole or life imprisonment without the possibility of parole. See Bellard, 229 Md. App. at 338, 145 A.3d at 77. At the outset, the Court observed that Bellard "d[id] not contend that the United States or Maryland Constitutions compel sentencing by jury in cases involving life without parole. His argument [wa]s a purely statutory one[.]" Id. at 328, 145 A.3d at 70. The Court concluded that CR § 2-304

---

[3]The circuit court also sentenced Bellard to four consecutive sentences of twenty years' imprisonment, one for each conviction for use of a handgun in the commission of a felony or crime of violence, and three consecutive sentences of life imprisonment, one for each conviction for conspiracy to commit murder.

[4]The Court of Special Appeals vacated two of the three convictions and sentences for conspiracy to commit murder because the parties agreed that the evidence did not support a finding of more than one conspiracy, the circuit court did not instruct the jury to determine whether there was more than one conspiracy, and the prosecutor did not argue that there was more than one conspiracy. See Bellard, 229 Md. App. at 339-40, 145 A.3d at 78.

is ambiguous because, although CR § 2-304(a) seems to commit sentencing to the trial court, CR § 2-304(b) contemplates that a jury determine whether the defendant should be sentenced to life imprisonment with the possibility of parole or life imprisonment without the possibility of parole. See Bellard, 229 Md. App. at 336, 145 A.3d at 76. The Court determined that the purpose of the relevant amendment to CR § 2-304 was simply to repeal the death penalty, not to expand a jury's authority to sentence a defendant or otherwise "alter sentencing procedures in non-capital murder cases." Id. at 336-37, 145 A.3d at 76. Finally, the Court rejected Bellard's contention that CR § 2-304 was void for vagueness, and concluded that there was "no basis on which to find the sentencing procedures at issue unconstitutionally vague." Id. at 338-39, 145 A.3d at 77-78.

Bellard thereafter filed a petition for a writ of *certiorari*, which this Court granted on December 2, 2016. See Bellard v. State, 450 Md. 660, 150 A.3d 817 (2016).

## DISCUSSION

## I.

### The Parties' Contentions

Bellard contends that CR § 2-304 gives a defendant the right to have a jury determine whether the defendant should be sentenced to life imprisonment with the possibility of parole or life imprisonment without the possibility of parole. Bellard argues that CR § 2-304 is unambiguous, and that CR § 2-304(b) plainly provides that a jury may sentence a defendant who has been convicted of first-degree murder to either life imprisonment or life imprisonment without the possibility of parole, and that, with respect to a sentence of life imprisonment without the possibility of parole, the jury's decision must

- 8 -

be unanimous. Bellard asserts that his interpretation of CR § 2-304 is supported by Md. Code Ann., Corr. Servs. (1999, 2008 Repl. Vol., 2016 Supp.) ("CS") § 6-112(c)(3), which provides that a trial court "or jury" shall consider a presentence investigation report at a sentencing proceeding under CR § 2-304 where the State seeks life imprisonment without the possibility of parole.

Bellard maintains that his interpretation of CR § 2-304 is supported by the statute's legislative history, as, in 2015 and 2016, the General Assembly refrained from passing bills that would have repealed the provisions that allow a jury to sentence a defendant to life imprisonment without the possibility of parole. With respect to the bills introduced during the 2015 legislative session, Bellard contends that the bills' language demonstrates that the bills' sponsors believed that CR § 2-304 grants a defendant the right to have a jury determine the defendant's sentence for first-degree murder. Bellard argues that the General Assembly's decision to not repeal or amend CR § 2-304(b) demonstrates an intent to permit a defendant to have a jury determine whether to impose life imprisonment without the possibility of parole where the defendant is convicted of first-degree murder. Bellard also asserts that, assuming there is any ambiguity in CR § 2-304, because CR § 2-304 is a penal statute, any ambiguity CR § 2-304 must be construed in his favor under the rule of lenity.

The State responds that the General Assembly's repeal of the death penalty did not affect the longstanding principle that, where the State seeks life imprisonment without the possibility of parole, a trial court, not a jury, determines the sentence. The State contends that, because CR § 2-304(b) applied only where the State sought the death penalty, and because the General Assembly has repealed the death penalty, CR § 2-304(b) is now

inoperative. The State argues that the General Assembly's only intent in amending CR (2012) § 2-304(a) was to repeal the death penalty, not to give new meaning to CR § 2-304(b) and permit a defendant to have a jury determine whether to impose a sentence of life imprisonment without the possibility of parole. The State asserts that the plain language of CR § 2-304, as amended in 2013, demonstrates that the General Assembly did not intend to create a right to jury sentencing in cases in which the State seeks life imprisonment without the possibility of parole. The State maintains that CR § 2-304(a) has been interpreted to mean that a trial court, not a jury, determines whether to impose life imprisonment without the possibility of parole, and that the same language has been retained in the statute even after repeal of the death penalty.

The State contends that, when read in context, the references to jury sentencing in CR § 2-304(b) do not create a new right, but are simply vestiges of the former death penalty sentencing scheme. The State argues that, even if CR § 2-304 is ambiguous, the legislative history supports the conclusion that the General Assembly did not intend to create a right to jury sentencing in cases in which the State seeks life imprisonment without the possibility of parole. As further support for its interpretation of CR § 2-304, the State points out that no right to jury sentencing has been enacted with respect to defendants convicted of other crimes for which a sentence of life imprisonment without the possibility of parole is an available penalty, such as first-degree rape and first-degree sexual offense. The State asserts that legislative inaction on subsequent bills introduced during the 2015 and 2016 legislative sessions is of no consequence, and is not indicative of any intent by the General Assembly to create a right to jury sentencing in cases of life imprisonment

without the possibility of parole through Senate Bill 276.  The State maintains that the rule of lenity is inapplicable in this case because the rule of lenity applies only where a statute is open to more than one interpretation, and the court is unable to determine which interpretation the General Assembly intended.

## Standard of Review

"An appellate court reviews without deference a trial court's interpretation of a statute[.]"  Howard v. State, 440 Md. 427, 434, 103 A.3d 572, 576 (2014) (citations omitted).  See also Allen v. State, 440 Md. 643, 667, 103 A.3d 700, 714 (2014) ("We review the Court of Special Appeals's interpretation of the statute *de novo*."  (Citation omitted)).  Because this case involves statutory interpretation, we set forth in some detail the relevant rules of statutory construction:

> The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly.
>
> As this Court has explained, to determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant.  When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent.  If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written.  In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning.  If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.
>
> If the language of the statute is ambiguous, however, then courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives, and the purpose of the enactment under

consideration. We have said that there is an ambiguity within a statute when there exist two or more reasonable alternative interpretations of the statute. When a statute can be interpreted in more than one way, the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal.

If the true legislative intent cannot be readily determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

In construing a statute, we avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.

In addition, the meaning of the plainest language is controlled by the context in which i[t] appears. As this Court has stated, because it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

Wagner v. State, 445 Md. 404, 417-19, 128 A.3d 1, 9-10 (2015) (citation and brackets omitted).

**Law**

CR § 2-201 defines first-degree murder and provides as follows with respect to the penalty:

(1) A person who commits a murder in the first degree is guilty of a felony and on conviction shall be sentenced to:

(i) imprisonment for life without the possibility of parole; or

(ii) imprisonment for life.

(2) Unless a sentence of imprisonment for life without the possibility of

parole is imposed in compliance with [CR] § 2-203 [] and [CR] § 2-304 [], the sentence shall be imprisonment for life.

CR § 2-201(b). In turn, CR § 2-203 provides:

A defendant found guilty of murder in the first degree may be sentenced to imprisonment for life without the possibility of parole only if:

(1) at least 30 days before trial, the State gave written notice to the defendant of the State's intention to seek a sentence of imprisonment for life without the possibility of parole; and

(2) the sentence of imprisonment for life without the possibility of parole is imposed in accordance with [CR] § 2-304[.]

And, CR § 2-304, the statute at issue in this case, provides, in its entirety, as follows:

(a) *In general.* — If the State gave notice under [CR] § 2-203(1) [], the court shall conduct a separate sentencing proceeding as soon as practicable after the defendant is found guilty of murder in the first degree to determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life.

(b) *Findings.* — (1) A determination by a jury to impose a sentence of imprisonment for life without the possibility of parole must be unanimous.

(2) If the jury finds that a sentence of imprisonment for life without the possibility of parole shall be imposed, the court shall impose a sentence of imprisonment for life without the possibility of parole.

(3) If, within a reasonable time, the jury is unable to agree to imposition of a sentence of imprisonment for life without the possibility of parole, the court shall impose a sentence of imprisonment for life.

As discussed in more detail below, the General Assembly amended CR § 2-304 in 2013. Since CR § 2-304's amendment, this Court has not addressed the amended statute, and it was not until the Court of Special Appeals's reported opinion in this case that the Court of Special Appeals discussed the amended statute. See Bellard, 229 Md. App. 312,

- 13 -

145 A.3d 61.[5]  However, prior to the 2013 amendment, numerous cases discussed CR § 2-304 and its predecessor.  Relevant here is Woods v. State, 315 Md. 591, 599-600, 601, 556 A.2d 236, 239-40, 241 (1989), in which this Court held that, under CR § 2-304's predecessor—Art. 27, § 413(k)(5) through (8)—where the State did not seek the death penalty and sought only life imprisonment without the possibility of parole, a trial court, not a jury, decided whether to sentence a defendant to life imprisonment without the possibility of parole.  In Woods, id. at 597, 598, 556 A.2d at 239, following a bench trial, a trial court convicted the defendant of first-degree murder; the State sought life imprisonment without the possibility of parole rather than the death penalty; and the trial court sentenced the defendant to life imprisonment without the possibility of parole.  Before this Court, the defendant contended that life imprisonment without the possibility of parole could not be imposed except as provided in Art. 27, § 413; *i.e.*, the defendant argued that the trial court erred in not allowing a jury to determine whether to impose life imprisonment without the possibility of parole.  See Woods, 315 Md. at 598, 556 A.2d at 239.

This Court rejected the defendant's contention, and held that, where the State seeks only life imprisonment without the possibility of parole, and does not seek the death

---

[5]Since the Court of Special Appeals's opinion in Bellard, the Court of Special Appeals has discussed the amended version of CR § 2-304 in only one other reported opinion—Shiflett v. State, 229 Md. App. 645, 673-76, 146 A.3d 504, 521-22 (2016), in which the Court of Special Appeals, heavily relying on its opinion in Bellard, rejected a defendant's contention that, where the State filed a notice of intent to seek life imprisonment without the possibility of parole and where the defendant was convicted of first-degree murder, he was entitled to elect to have a jury sentence him.

penalty, "the separate sentencing proceeding is before the court—a jury is not involved." Id. at 599, 556 A.2d at 240. In other words, where the defendant "is not subject to execution but is subject to incarceration for life without parole[,]" the procedure for sentencing "is in the sound discretion of the trial judge." Id. at 600-01, 556 A.2d at 240-41. This Court explained that its holding was warranted by the language of Art. 27, § 413 because "[a]ll references in Art. 27, § 413 to the elaborate proceedings [before a jury] are in the frame of reference of the death penalty." Id. at 601, 556 A.2d at 241 (citations omitted). This Court stated that its holding was also supported by Art. 27, §§ 412's and 413's legislative history, which established that the General Assembly created life imprisonment without the possibility of parole as a sentence for first-degree murder as a "compromise" option that avoided the expense of seeking the death penalty, while ensuring that the defendant would not pose a threat to society. See id. at 601, 556 A.2d at 241. In conclusion, this Court stated that the General Assembly "did not intend that the sentencing scheme of [Art. 27,] § 413 be utilized with respect to a sentence of life without parole." Id. at 601, 556 A.2d at 241.

## Analysis

Here, we hold that, under CR § 2-304(a), where the State has given notice of an intent to seek life imprisonment without the possibility of parole and where a defendant is convicted of first-degree murder, the trial court, not the jury, determines whether to sentence the defendant to life imprisonment or life imprisonment without the possibility of parole; stated otherwise, CR § 2-304 does not grant a defendant who is convicted of first-degree murder the right to have a jury determine whether to impose a sentence of life

- 15 -

imprisonment without the possibility of parole. We reach this conclusion by applying the well-settled principles of statutory construction, and begin by examining CR § 2-304's language. On the one hand, CR § 2-304(a) provides that, if the State seeks life imprisonment without the possibility of parole, "the court shall conduct a separate sentencing proceeding . . . to determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life." On the other hand, CR § 2-304(b)(1) states that "[a] determination by a jury to impose a sentence of imprisonment for life without the possibility of parole must be unanimous[,]" and CR § 2-304(b)(2) states: "If the jury finds that a sentence of imprisonment for life without the possibility of parole shall be imposed, the court shall impose a sentence of imprisonment for life without the possibility of parole."

The conflict between CR § 2-304(a) and CR § 2-304(b) is evident—CR § 2-304(a) provides that a trial court shall conduct a sentencing proceeding to determine whether to sentence a defendant who is convicted of first-degree murder to life imprisonment without the possibility of parole, whereas CR § 2-304(b), although not a grant of authority for a jury to conduct a sentencing proceeding, appears to contemplate that a jury determine whether to sentence a defendant to life imprisonment without the possibility of parole. In short, CR § 2-304's language is ambiguous because "there exist two or more reasonable alternative interpretations of the statute." Wagner, 445 Md. at 418, 128 A.3d at 9 (brackets and citation omitted). Indeed, Bellard and the State provide two such reasonable alternative interpretations of the CR § 2-304. Under Bellard's interpretation, pursuant to CR § 2-304(a) and (b), either a trial court or a jury decides whether to impose life imprisonment

- 16 -

without the possibility of parole, depending on whether a defendant has elected to have a jury make such a determination. By contrast, under the State's interpretation, pursuant to CR § 2-304(a), only a trial court can decide whether to impose life imprisonment without the possibility of parole. These competing interpretations support the conclusion that CR § 2-304's language is ambiguous.

We are unpersuaded by Bellard's contention that CR § 2-304's language is clear and unambiguous, and provides that a defendant who is convicted of first-degree murder may elect to have a jury determine whether to impose a sentence of life imprisonment without the possibility of parole. Similarly, we are unconvinced by the argument that CR § 2-304(a) and CR § 2-304(b) may be read to be consistent with one another, such that CR § 2-304(a) could be interpreted to mean that a trial court would convene a sentencing proceeding and that, under CR § 2-304(b), the jury would make the determination as to the appropriate sentence. CR § 2-304(a)'s plain language states that a trial court shall conduct a separate sentencing proceeding to determine whether to impose a sentence of life imprisonment without the possibility of parole. And, when the General Assembly amended CR (2012) § 2-304, it eliminated CR (2012) § 2-304(a)(2), which expressly provided that the trial "court or jury shall determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life." The effect of eliminating CR (2012) § 2-304(a)(2) is that, under CR § 2-304(a), a trial court conducts the sentencing proceeding to make the determination as to life imprisonment without the possibility of parole. In other words, contrary to Bellard's contention, CR § 2-304(a) and CR § 2-304(b) are inconsistent, and an ambiguity exists in CR § 2-304's

language as to whether the trial court or a jury determines whether to impose a sentence of life imprisonment without the possibility of parole where a defendant has been convicted of first-degree murder.

Because, read in its entirety, CR § 2-304's language is ambiguous, we must "resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal." Wagner, 445 Md. at 418, 128 A.3d at 9 (citation omitted). To determine the General Assembly's intent in amending CR (2012) § 2-304, we look to CR § 2-304's purpose, its legislative history, and relevant case law. A review of those resources of statutory construction demonstrate that, in repealing the death penalty and amending CR (2012) § 2-304(a), without amending CR (2012) § 2-304(b), the General Assembly did not intend to give a defendant who is convicted of first-degree murder the right to elect to have a jury determine whether to impose a sentence of life imprisonment without the possibility of parole. We turn to CR § 2-304's legislative history.

CR § 2-304's predecessor, Md. Code Ann. (1957, 1996 Repl. Vol., 2001 Supp.), Art. 27, § 413(k)(5) through (8), was part of a comprehensive statute setting forth the sentencing procedure upon a defendant's conviction for first-degree murder, and stated:

> (5) If the State gives the notice required under § 412(b) of this article of intention to seek a sentence of imprisonment for life without the possibility of parole but does not give notice of intention to seek the death penalty, the court shall conduct a separate sentencing proceeding as soon as practicable after the trial has been completed to determine whether to impose a sentence of imprisonment for life or imprisonment for life without the possibility of parole.

> (6) If the State gives the notice required under § 412(b) of this article of intention to seek the death penalty in addition to the notice of intention to seek a sentence of imprisonment for life without the possibility of parole, and

the court or jury determines that a sentence of death may not be imposed under the provisions of this section, that court or jury shall determine whether to impose a sentence of imprisonment for life or imprisonment for life without the possibility of parole.

(7)     (i) In determining whether to impose a sentence of imprisonment for life without the possibility of parole, a jury shall agree unanimously on the imposition of a sentence of imprisonment for life without the possibility of parole.

(ii) If the jury agrees unanimously to impose a sentence of imprisonment for life without the possibility of parole, the court shall impose a sentence of imprisonment for life without the possibility of parole.

(iii) If the jury, within a reasonable time, is not able to agree unanimously on the imposition of a sentence of imprisonment for life without the possibility of parole, the court shall dismiss the jury and impose a sentence of imprisonment for life.

(8) If the State gives the notice required under § 412 of this article of the State's intention to seek a sentence of imprisonment for life without the possibility of parole, the court shall conduct a separate sentencing proceeding as soon as practicable after the trial has been completed to determine whether to impose a sentence of imprisonment for life or imprisonment for life without the possibility of parole.

In 2002, the General Assembly recodified Art. 27, § 413(k)(5) through (8) as CR (2012) § 2-304; the Revisor's Note stated that CR (2012) § 2-304 "is new language derived without substantive change from former Art. 27, § 413(k)(5) through (8)." 2002 Md. Laws 229 (Vol. I, Ch. 26, H.B. 11). At that time, and until 2013, CR (2012) § 2-304 provided, in full, as follows:

(a) *In general.* — (1) If the State gave notice under § 2-203(1) of this title, but did not give notice of intent to seek the death penalty under § 2-202(a)(1) of this title, the court shall conduct a separate sentencing proceeding as soon as practicable after the defendant is found guilty of murder in the first degree to determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life.

(2) If the State gave notice under both §§ 2-202(a)(1) and 2-203(1) of this title, but the court or jury determines that the death sentence may not be imposed, that court or jury shall determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life.

(b) *Findings.* — (1) A determination by a jury to impose a sentence of imprisonment for life without the possibility of parole must be unanimous.

(2) If the jury finds that a sentence of imprisonment for life without the possibility of parole shall be imposed, the court shall impose a sentence of imprisonment for life without the possibility of parole.

(3) If, within a reasonable time, the jury is unable to agree to imposition of a sentence of imprisonment for life without the possibility of parole, the court shall impose a sentence of imprisonment for life.

Thus, under CR (2012) § 2-304(a)(1), where the State sought life imprisonment without the possibility of parole, and had not filed notice of intent to seek the death penalty, the trial court was required to conduct a separate sentencing proceeding to determine whether to impose life imprisonment without the possibility of parole or life imprisonment. Under CR (2012) § 2-304(a)(1), the jury was not involved in any determination with respect to life imprisonment without the possibility of parole where the State had filed only a notice of intent to seek life imprisonment without the possibility of parole and had not filed a notice of intent to seek the death penalty. Indeed, in Woods, 315 Md. at 599, 556 A.2d at 240, this Court had held as much, concluding that, where the State gives notice only of an intent to seek life imprisonment without the possibility of parole, "the separate sentencing proceeding is before the court—a jury is not involved."

By contrast, under CR (2012) § 2-304(a)(2), if the State gave notice of an intent to seek both the death penalty and life imprisonment without the possibility of parole, but

either the trial court or the jury determined that the death penalty should not be imposed, then either the trial court or the jury was required to determine whether to impose life imprisonment without the possibility of parole. In other words, under CR (2012) § 2-304(a)(2), it was only where the State sought both the death penalty and life imprisonment without the possibility of parole, where the defendant did not waive a jury sentencing proceeding, see CR (2012) § 2-303(c)(3) (providing that, where the State sought the death penalty, and where the defendant was convicted of first-degree murder, a sentencing proceeding was to be conducted before the trial court only if the defendant had waived a jury sentencing proceeding), and where a jury was unable to agree on the death penalty, that the jury would then be tasked with deciding whether to impose life imprisonment without the possibility of parole or life imprisonment. In such cases, under CR (2012) § 2-304(b)(1), the jury's determination to impose life imprisonment without the possibility of parole was to be unanimous; and, under CR (2012) § 2-304(b)(2), the trial court was to impose life imprisonment without the possibility of parole where the jury was unanimous. However, under CR (2012) § 2-304(b)(3), if the jury could not agree within a reasonable time to impose life imprisonment without the possibility of parole, then the trial court was to impose life imprisonment.

In 2013, as explained above, through Senate Bill 276, the General Assembly repealed the death penalty and, among other things, amended CR (2012) § 2-304, by deleting references to the death penalty:

> (a) *In general.* — (1) If the State gave notice under § 2-203(1) of this title, but did not give notice of intent to seek the death penalty under § 2-202(a)(1) of this title, the court shall conduct a separate sentencing proceeding as soon

as practicable after the defendant is found guilty of murder in the first degree to determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life.

~~(2) If the State gave notice under both §§ 2-202(a)(1) and 2-203(1) of this title, but the court or jury determines that the death sentence may not be imposed, that court or jury shall determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life.~~

(b) *Findings.* — (1) A determination by a jury to impose a sentence of imprisonment for life without the possibility of parole must be unanimous.

(2) If the jury finds that a sentence of imprisonment for life without the possibility of parole shall be imposed, the court shall impose a sentence of imprisonment for life without the possibility of parole.

(3) If, within a reasonable time, the jury is unable to agree to imposition of a sentence of imprisonment for life without the possibility of parole, the court shall impose a sentence of imprisonment for life.

2013 Md. Laws 2317 (Vol. III, Ch. 156, S.B. 276).

The stated purpose of Senate Bill 276 was to

repeal[] the death penalty; repeal[] procedures and requirements related to the death penalty; provid[e] that in certain cases in which the State has filed a notice of intent to seek a sentence of death, the notice shall be considered withdrawn and it shall be considered a notice to seek a sentence of life imprisonment without the possibility of parole under certain circumstances; provid[e] that certain persons serving life sentences are not eligible for Patuxent Institution under certain circumstances; alter[] the circumstance concerning parole for persons serving life sentences when the State sought a certain penalty; . . . alter[] the authorization for the Governor to commute or change a sentence of death into a certain period of confinement; mak[e] conforming and clarifying changes; and generally relat[e] to the repeal of the death penalty.

2013 Md. Laws 2298 (Vol. III, Ch. 156, S.B. 276) (underlining omitted). Simply put, Senate Bill 276's sole purpose was to repeal the death penalty and enact necessary and related changes to effectuate the repeal of the death penalty. The General Assembly's

- 22 -

intent to repeal the death penalty is demonstrated by the amendments that it enacted with respect to CR § 2-304: CR § 2-304(a) contained references to the death penalty, which the General Assembly deleted, whereas CR § 2-304(b) lacked references to the death penalty, and the General Assembly left CR § 2-304(b) intact. Nothing in Senate Bill 276's purpose clause or elsewhere evidences an intent by the General Assembly, in repealing the death penalty, to create a right for a defendant who is convicted of first-degree murder to elect to have a jury determine whether to impose life imprisonment without the possibility of parole. Indeed, Senate Bill 276's purpose clause fails to show any intent whatsoever by the General Assembly to expand a jury's authority with respect to sentencing or to empower a jury to impose life imprisonment without the possibility of parole where a defendant is convicted of first-degree murder.

Senate Bill 276's preamble explains that, in 2008, the General Assembly created the Maryland Commission on Capital Punishment "for the purpose of studying all aspects of capital punishment as currently and historically administered in the State[,]" and that the Commission's report included a "strong recommendation that . . . capital punishment be abolished in Maryland[.]" 2013 Md. Laws 2299-2300 (Vol. III, Ch. 156, S.B. 276). Senate Bill 276's preamble reinforces the conclusion that Senate Bill 276's singular goal was to repeal the death penalty, not to change any aspect of sentencing a defendant who has been convicted of first-degree murder where the State has filed a notice of intent to seek life imprisonment without the possibility of parole. Senate Bill 276's purpose clause and preamble mention only the General Assembly's intent to repeal the death penalty, and neither the purpose clause nor the preamble references any other alteration to the then-

- 23 -

existing sentencing proceedings for first-degree murder.

Senate Bill 276's Revised Fiscal and Policy Note demonstrates that the General Assembly's sole purpose was to repeal the death penalty in Maryland, not to create a right for a defendant who is convicted of first-degree murder to elect to have a jury determine whether to impose life imprisonment without the possibility of parole. Senate Bill 276's Revised Fiscal and Policy Note states at the outset that the "bill repeals the death penalty and all provisions relating to it, including those relating to its administration and post death sentencing proceedings." S.B. 276, 2013 Leg., Reg. Sess. (Md. 2013), Revised Fiscal and Policy Note, at 1, http://mgaleg.maryland.gov/2013RS/fnotes/bil_0006/sb0276.pdf [https://perma.cc/N3JF-A5UM]. Indeed, the entirety of the Revised Fiscal and Policy Note discusses the death penalty, including the fiscal effect of the repeal of the death penalty, the current law with respect to the death penalty, and a brief summary of prior introductions of bills that had sought to repeal the death penalty. See id. at 1-7.

Senate Bill 276's Revised Fiscal and Policy Note does not demonstrate any intent on the General Assembly's behalf to create a right to jury sentencing for life imprisonment without the possibility of parole. Significantly, Senate Bill 276's Revised Fiscal and Policy Note mentions the word "jury" six times, and only in its discussions of "Current Law" and its summary of Miles v. State, 421 Md. 596, 607, 598, 28 A.3d 667, 673, 668 (2011), in which this Court held that the Sixth Amendment does not require a trial court to instruct a jury that it cannot sentence a defendant to death unless every juror is persuaded beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances. See S.B. 276, 2013 Leg., Reg. Sess. (Md. 2013), Revised Fiscal and Policy

Note, at 2-3. Senate Bill 276's Revised Fiscal and Policy Note's section labeled "Current Law" contains, for example, the following statement: "A court or jury, in considering the imposition of the death penalty, must first consider whether any of 10 aggravating circumstances exist beyond a reasonable doubt." Id. at 2. The word "jury" does not appear anywhere in Senate Bill 276's Revised Fiscal and Policy Note's sections titled "Fiscal Summary," "Proposed Regulations," "Status of the Death Penalty Nationally," "The Office of the Public Defender," "Department of Public Safety and Correctional Services," "Judiciary and Office of the Attorney General," "Additional Comments," and "Additional Information." See id. at 1-2, 3-7.

Importantly, in 1989—i.e., more than two decades before the General Assembly repealed the death penalty in 2013—in Woods, 315 Md. at 599-600, 601, 556 A.2d at 239-40, 241, this Court held that, under CR (2012) § 2-304's predecessor, where the State did not seek the death penalty, and instead sought only life imprisonment without the possibility of parole, where a defendant was convicted of first-degree murder, a trial court, not a jury, decided whether to sentence a defendant to life imprisonment without the possibility of parole. Woods remained good law as of 2013, when the General Assembly repealed the death penalty. Thus, when the General Assembly amended CR (2012) § 2-304, the status quo was that a trial court was the only body empowered under CR (2012) § 2-304's predecessor and case law to impose life imprisonment without the possibility of parole. The General Assembly is presumed to be aware of this Court's interpretations of statutes. See, e.g., Moore v. State, 424 Md. 118, 150, 34 A.3d 513, 531-32 (2011) ("In [amending a statute regarding firearms], the [General Assembly] was aware, and in any

event, is presumed to have been aware, of this Court's interpretation of 'firearm' in light of that federal statute." (Citations omitted)); Allen v. State, 402 Md. 59, 72, 935 A.2d 421, 428 (2007) ("The [General Assembly] is presumed to be aware of our prior holdings when it enacts new legislation[,] and, where it does not express a clear intention to abrogate the holdings of those decisions, to have acquiesced in those holdings." (Citations omitted)). Hence, we presume that, when the General Assembly amended CR (2012) § 2-304, the General Assembly was aware that, under Woods, a jury could not impose life imprisonment without the possibility of parole following a defendant's conviction of first-degree murder where the State sought only life imprisonment without the possibility of parole and not the death penalty.[6]

Tellingly, the Revised Fiscal and Policy Note of Senate Bill 276—through which the General Assembly repealed the death penalty and, in pertinent part, amended CR (2012) § 2-304—does not mention an intent to abrogate or supersede Woods, either in its discussion of "Current Law" or any other section. See S.B. 276, 2013 Leg., Reg. Sess. (Md. 2013), Revised Fiscal and Policy Note. Nor does Senate Bill 276's Revised Fiscal and Policy Note mention any intent to alter the principle that, under existing law, only a trial court could impose life imprisonment without the possibility of parole where the State sought only life imprisonment without the possibility of parole, and where the defendant

---

[6]To be sure, Woods was decided well before the General Assembly's repeal of the death penalty, and the statutory scheme that existed at that time, which included the death penalty, was different. However, in Woods, 315 Md. at 598, 600, 556 A.2d at 239, 240, the State did not seek the death penalty, and sought only life imprisonment without the possibility of parole—i.e., the death penalty was not at issue in the case—and the statutory language at issue in Woods is substantively identical to CR § 2-304(a)'s current language.

was convicted of first-degree murder. See id. Senate Bill 276's Revised Fiscal and Policy Note's failure to reference, let alone discuss, Woods or its holding, or to discuss in any way a change in the manner in which life imprisonment without the possibility of parole is to be imposed, strongly indicates that Senate Bill 276's purpose was simply to repeal the death penalty, and not to disturb the existing sentencing procedures for a defendant who has been convicted of first-degree murder.

As additional support for the determination that the General Assembly did not intend to create a right to have a jury decide whether to impose life imprisonment without the possibility of parole, we observe that nothing in Senate Bill 276 or elsewhere demonstrates that the General Assembly intended to create a right to sentencing by a jury for a defendant convicted of other crimes for which life imprisonment without the possibility of parole is an available penalty. For example, both first-degree rape and first-degree sexual offense are punishable by life imprisonment without the possibility of parole. See CR § 3-303(d) (setting forth the circumstances under which a defendant who is convicted of first-degree rape may be subject to life imprisonment without the possibility of parole); CR § 3-305(d) (setting forth the circumstances under which a defendant who is convicted of first-degree sexual offense may be subject to life imprisonment without the possibility of parole). Logic dictates that, if the General Assembly intended to create a right for a defendant to elect to have a jury determine whether to impose life imprisonment without the possibility of parole, it would have extended that right not only to defendants convicted of first-degree murder, but also to similarly situated defendants convicted of other crimes punishable by life imprisonment without the possibility of parole. Yet, neither

CR § 3-303, CR § 3-305, nor the general concept of permitting jury sentencing for crimes punishable by life imprisonment without the possibility of parole, is mentioned in Senate Bill 276's language, purpose clause, preamble, or Revised Fiscal and Policy Note.

Moreover, although perhaps stating the obvious, Senate Bill 276 did not affect just CR (2012) § 2-304; Senate Bill 276 repealed or amended several statutes in different articles of the Code of Maryland to effectuate the General Assembly's repeal of the death penalty. CR (2012) § 2-304 was but one of several statutes that mentioned the death penalty, and thus needed to be repealed or amended. For example, in several instances across multiple statutes, the General Assembly simply deleted the words "death or" before the words "imprisonment" or "life imprisonment." See, e.g., 2013 Md. Laws 2302, 2306, 2307, 2308, 2322, 2323 (Vol. III, Ch. 156, S.B. 276). In other instances, the General Assembly deleted the words and sections that referenced "the death penalty" or "a capital case." See, e.g., 2013 Md. Laws 2301, 2305 (Vol. III, Ch. 156, S.B. 276). These circumstances demonstrate that Senate Bill 276 was concerned strictly with striking all references to the death penalty. Indeed, the General Assembly's amendment of CR (2012) § 2-304(a)—including striking the reference in CR (2012) § 2-304(a)(1) of the State giving notice of intent to seek the death penalty, and striking in its entirety CR (2012) § 2-304(a)(2), which addressed the circumstance where the trial court or jury determines that the death sentence may not be imposed—without amending CR (2012) § 2-304(b), which does not explicitly mention or use words referencing the death penalty, demonstrates that the General Assembly's sole focus was repealing the death penalty and striking references to the death penalty, not making any other substantive changes in any of the affected

- 28 -

statutes.

After thorough review of Senate Bill 276's legislative history, we conclude that the Bill's legislative history unequivocally demonstrates that the General Assembly's sole intent was to repeal the death penalty, and CR (2012) § 2-304 was amended as part of the repeal of the death penalty. After the General Assembly eliminated the reference in CR (2012) § 2-304(a)(1) to the State giving notice of intent to seek the death penalty, and eliminated CR (2012) § 2-304(a)(2) in its entirety, CR § 2-304(a) now simply provides that, if the State gave notice of intent to seek life imprisonment without the possibility of parole, "the court shall conduct a separate sentencing proceeding as soon as practicable after the defendant is found guilty of murder in the first degree to determine whether the defendant shall be sentenced to imprisonment for life without the possibility of parole or to imprisonment for life." In other words, the trial court has the responsibility for conducting the sentencing proceeding and determining whether to impose life imprisonment without the possibility of parole.

To be sure, CR (2012) § 2-304(b), which existed prior to the General Assembly's amendment of CR (2012) § 2-304(a), remains intact. In the process of repealing the death penalty and amending CR (2012) § 2-304(a) and other statutes, CR (2012) § 2-304(b) was not amended or deleted. Conceivably, this inaction was due to the circumstance that Senate Bill 276's focus was identifying, and deleting, express references to the death penalty. Because CR § 2-304(b) lacks an express reference to the death penalty, it may not have been addressed in the amendment process for that reason. In any event, we observe that CR § 2-304(b) does not contain any provision empowering a jury to conduct a sentencing

- 29 -

proceeding independent of what previously existed in CR (2012) § 2-304(a)(2); indeed, under CR (2012) § 2-304, subsection (b) became operative only if a jury chose not to impose the death penalty under CR (2012) § 2-304(a)(2). Plainly put, standing alone, CR § 2-304(b) is not a grant of authority or empowerment for a jury to conduct a sentencing proceeding to determine whether to impose life imprisonment without the possibility of parole. Rather, CR § 2-304(b) merely explains how a jury's determination was to be handled under the circumstances that existed before the repeal of the death penalty. It is evident that CR § 2-304(b) is a vestige of CR (2012) § 2-304 that is no longer operative in light of the General Assembly's repeal of the death penalty.[7]

We have no hesitancy whatsoever in concluding that, with Senate Bill 276, the General Assembly's intent was only to repeal the death penalty, and not to grant a defendant who is convicted of first-degree murder the right to have a jury determine whether to impose life imprisonment without the possibility of parole where the State has filed a notice of intent to seek such a sentence. With respect to legislative intent, we make the obvious point that, had it desired to do so, the General Assembly easily could have introduced and enacted a bill, or even fashioned a provision of Senate Bill 276, to provide

---

[7]For the same reason, we are unpersuaded by Bellard's contention that his interpretation of CR § 2-304 is supported by CS § 6-112(c)(3), which states: "The court or jury before which the separate proceeding is conducted under [CR] § 2-304 . . . shall consider the [presentence investigation] report." A review of Senate Bill 276 reveals that, in repealing the death penalty, the General Assembly amended CS § 6-112(c)(3) by deleting reference to CR (2012) § 2-303, which concerned only the death penalty. See 2013 Md. Laws 2301, 2310-17 (Vol. III, Ch. 156, S.B. 276). It appears that the reference to the "jury" that remains in CS § 6-112(c)(3) is a remnant of the former death penalty sentencing scheme that, just as CR (2012) § 2-304(b), continued to exist after the General Assembly repealed the death penalty.

that, where the State seeks life imprisonment without the possibility of parole, and where a defendant is convicted of first-degree murder, the defendant has the right to choose to have either a trial court or a jury determine whether to impose life imprisonment without the possibility of parole. Cf. Bottini v. Dep't of Fin., 450 Md. 177, 206, 147 A.3d 371, 389 (2016) ("[W]e reiterate the obvious point that the General Assembly could have identified a bank account and the funds contained in a bank account as a separate classification of property subject to forfeiture, or as a specific form of tangible or intangible personal property distinct from money, had it desired to do so." (Citation omitted)); Montgomery Cnty. v. Phillips, 445 Md. 55, 76, 124 A.3d 188, 200 (2015) ("Tellingly, the General Assembly could have, but did not, modify or otherwise raise the tax ceiling on the combined State agricultural land transfer tax and county agricultural land transfer tax that may be imposed."). Absent any indication in the relevant statutory language or the legislative history that the General Assembly intended the deletions regarding the death penalty in CR (2012) § 2-304(a) to also create a new right for a defendant to choose to have a jury determine whether to impose life imprisonment without the possibility of parole, we decline to construe CR § 2-304 to reach such a result.

Our conclusion with respect to CR § 2-304 and the General Assembly's intent is unaffected by the circumstance relied on by Bellard that, in 2015 and 2016, bills that would have repealed CR § 2-304 were proposed, but not passed. We shall briefly describe those bills. In 2015, the General Assembly did not pass House Bill 1135 or Senate Bill 849—identical bills that were entitled "Life Without Parole – Repeal of Sentencing Proceeding" and "Life Without Parole – Jury Sentencing Repeal," respectively, and that would have,

among other things, repealed CR § 2-304 in its entirety.  H.B. 1135, 2015 Leg., Reg. Sess. (Md. 2015), http://mgaleg.maryland.gov/2015RS/bills/hb/hb1135f.pdf [https://perma.cc/ NW6R-LGJN]; S.B. 849, 2015 Leg., Reg. Sess. (Md. 2015), http://mgaleg.maryland.gov/2015RS/bills/sb/sb0849f.pdf [https://perma.cc/FW56- DSW5].  House Bill 1135's and Senate Bill 849's purpose paragraphs stated:

> FOR the purpose of repealing certain provisions of law that provide a separate jury proceeding to determine whether a person convicted of first degree murder is sentenced to imprisonment for life without the possibility of parole or imprisonment for life; establishing that a court may sentence a person convicted of first degree murder to imprisonment for life without the possibility of parole without the requirement of a separate jury sentencing procedure under certain circumstances; making conforming changes; providing for the application of this Act; and generally relating to sentencing for first degree murder.

H.B. 1135, 2015 Leg., Reg. Sess. (Md. 2015), at 1; S.B. 849, 2015 Leg., Reg. Sess. (Md. 2015), at 1.

Consistently, Senate Bill 849's Fiscal and Policy Note stated: "This bill repeals the separate jury sentencing proceeding for first-degree murder cases in which the State seeks a sentence of life imprisonment without the possibility of parole and corresponding statutory provisions."  S.B. 849, 2015 Leg., Reg. Sess. (Md. 2015), Fiscal and Policy Note, at 1, http://mgaleg.maryland.gov/2015RS/fnotes/bil_0009/sb0849.pdf [https://perma.cc/ TER2-U4PL]; see also H.B. 1135, 2015 Leg., Reg. Sess. (Md. 2015), Fiscal and Policy Note, at 1, http://mgaleg.maryland.gov/2015RS/fnotes/bil_0005/hb1135.pdf [https://perma.cc/VR8R-8BFY] (stating the same).  The Senate Judicial Proceedings Committee gave Senate Bill 849 a favorable report, see http://mgaleg.maryland.gov/webmga/frmMain.aspx?pid=billpage&stab=03&id=sb0849&

tab=subject3&ys=2015rs [https://perma.cc/2AFT-EXGB], but neither Senate Bill 849 nor House Bill 1135 went to a vote before its respective body, and Senate Bill 849 was recommitted to the Senate Judicial Proceedings Committee, see id.; http://mgaleg. maryland.gov/webmga/frmMain.aspx?pid=billpage&stab=03&id=hb1135&tab=subject3 &ys=2015rs [https://perma.cc/EQH9-8T9C].

Similarly, in 2016, the General Assembly did not pass House Bill 95 or Senate Bill 157—identical bills that were entitled "Life Without Parole – Repeal of Sentencing Proceeding" and that would have, among other things, repealed CR § 2-304 in its entirety. See H.B. 95, 2016 Leg., Reg. Sess. (Md. 2016), http://mgaleg.maryland.gov/ 2016RS/bills/hb/hb0095f.pdf [https://perma.cc/RTV8-GNZ8]; S.B. 157, 2016 Leg., Reg. Sess. (Md. 2016), http://mgaleg.maryland.gov/2016RS/bills/sb/sb0157f.pdf [https:// perma.cc/H8DM-R3H8]. House Bill 95's and Senate Bill 157's purpose paragraphs were identical to those of House Bill 1135 and Senate Bill 849 in 2015. House Bill 95 and Senate Bill 157 received unfavorable reports, and were withdrawn. See http://mgaleg.maryland.gov/webmga/frmMain.aspx?pid=billpage&stab=03&id=hb0095 &tab=subject3&ys=2016rs [https://perma.cc/6NSX-EQHS]; http://mgaleg.maryland. gov/webmga/frmMain.aspx?pid=billpage&stab=03&id=sb0157&tab=subject3&ys=2016 rs [https://perma.cc/N7Q2-DDHX].

"Because a bill might fail for a myriad of reasons, the bill's failure is a rather weak reed upon which to lean in ascertaining the General Assembly's intent." NVR Mortg. Fin., Inc. v. Carlsen, 439 Md. 427, 438, 96 A.3d 202, 208 (2014) (brackets, citation, and internal quotation marks omitted). In our view, the General Assembly's inaction with respect to

bills that were introduced after Senate Bill 276 was passed in 2013 is not indicative of an intent on the part of the General Assembly to create a right for a defendant who is convicted of first-degree murder to have a jury determine whether to impose life imprisonment without the possibility of parole. Simply put, we conclude that legislative action speaks louder than legislative inaction; and, here, the legislative action in question is that the General Assembly repealed the death penalty—nothing more, nothing less. As discussed in detail above, an examination of the circumstances of that repeal reveals that the General Assembly did not intend to do more than repeal the death penalty, and certainly did not intent to disturb the established principle, as set forth in this Court's holding in <u>Woods</u>, that a trial court, not a jury, decides whether to impose life imprisonment without the possibility of parole where a defendant is convicted of first-degree murder and the State has provided the requisite notice of its intent to seek such a sentence.

Finally, although we conclude that CR § 2-304 is ambiguous, we determine that, contrary to Bellard's contention, the rule of lenity does not apply under the circumstances of this case. In <u>Oglesby v. State</u>, 441 Md. 673, 676, 681, 109 A.3d 1147, 1149, 1151-52 (2015), we described the rule of lenity as follows:

> When a court construes a criminal statute, it may invoke a principle known as the "rule of lenity" when the statute is open to more than one interpretation and the court is otherwise unable to determine which interpretation was intended by the [General Assembly]. Instead of arbitrarily choosing one of the competing interpretations, the court selects the interpretation that treats the defendant more leniently. The rule of lenity is not so much a tool of statutory construction as a default device to decide which interpretation prevails when the tools of statutory construction fail.
>
> . . .

The "rule of lenity" is not a rule in the usual sense, but an aid for dealing with ambiguity in a criminal statute. Under the rule of lenity, a court confronted with an otherwise unresolvable ambiguity in a criminal statute that allows for two possible interpretations of the statute will opt for the construction that favors the defendant. For a court construing a statute, the rule of lenity is not a means for determining—or defeating—legislative intent. Rather, it is a tie-goes-to-the-runner device that the court may turn to when it despairs of fathoming how the General Assembly intended that the statute be applied in the particular circumstances. It is a tool of last resort, to be rarely deployed and applied only when all other tools of statutory construction fail to resolve an ambiguity. This follows from the fact that our goal in construing statutes is always to ascertain and carry out the legislative purpose of the statute and not to seek out an interpretation that necessarily favors one party or the other.

(Citations and footnote omitted). And, in State v. Johnson, 442 Md. 211, 218-19, 112 A.3d 383, 387 (2015), we stated: "The rule of lenity allows a court to avoid interpreting a criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what the General Assembly intended." (Citation, brackets, and internal quotation marks omitted). Basically, the rule of lenity applies where there is no evidence of legislative intent with respect to an ambiguous statute—*i.e.*, the ambiguity cannot be resolved under the traditional principles of statutory construction.

In this case, although we concluded that CR § 2-304's language is ambiguous and we turned to additional tools of statutory construction to ascertain the General Assembly's intent, the tools of statutory construction did not fail—Senate Bill 276's legislative history plainly demonstrates that the General Assembly's sole purpose was to repeal the death penalty, not to grant a defendant a right to jury sentencing, or to expand a jury's role to a sentencing determination, where a defendant is convicted of first-degree murder and the

State seeks life imprisonment without the possibility of parole. With certainty, Senate Bill 276's legislative history shows that the General Assembly did not intend to alter the existing sentencing procedures where the State seeks life imprisonment without the possibility of parole after a first-degree murder conviction—namely, that the trial court conducts the sentencing proceeding to determine whether to impose life imprisonment without the possibility of parole; and a jury has no role in the sentencing. Accordingly, we need not resort to the rule of lenity.

In sum, we conclude that, under CR § 2-304(a), based on the statute's legislative history and relevant case law—namely, Woods—where a defendant is convicted of first-degree murder and the State has given notice of an intent to seek life imprisonment without the possibility of parole, the trial court, not the jury, determines whether to sentence the defendant to life imprisonment or life imprisonment without the possibility of parole. In other words, CR § 2-304 does not grant a defendant who is convicted of first-degree murder the right to have a jury determine whether to impose life imprisonment without the possibility of parole. Therefore, in this case, the circuit court did not err in denying Bellard's motion to strike the State's notice and in striking, or denying, Bellard's notice of election to be sentenced by a jury.

## II.

### The Parties' Contentions

Bellard contends that Maryland's sentencing scheme for life imprisonment without the possibility of parole is unconstitutional for three reasons. First, Bellard argues that the relevant statutes do not "restrict, guide[,] or limit" the State's discretion to determine

whether to seek life imprisonment without the possibility of parole. Second, Bellard asserts that the pertinent statutes do not provide the sentencing authority, whether a trial court or a jury, with "any meaningful guidance" regarding what considerations are relevant in determining whether to impose life imprisonment or life imprisonment without the possibility of parole. Third, Bellard maintains that the relevant statutes do not require a trial court to determine that the State has established the existence of any factors that justify life imprisonment without the possibility of parole, and do not require a jury to find, beyond a reasonable doubt, the existence of any such factors. In sum, Bellard contends that Maryland's sentencing scheme for life imprisonment without the possibility of parole violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Articles 16, 21, and 22 of the Maryland Declaration of Rights because it permits the imposition of life imprisonment without the possibility of parole "in the absence of any eligibility factors or predicate findings[.]"

The State responds that the United States Constitution and the Maryland Declaration of Rights permit the imposition of life imprisonment without the possibility of parole in the same manner as every other sentence except the death penalty. The State points out that both this Court and the Supreme Court have rejected the contention that life imprisonment without the possibility of parole can be imposed only under the same constitutional protections and procedure that are required when the death penalty is imposed. The State argues that, in Woods, this Court rebuffed the first two constitutional arguments raised by Bellard—namely, that Maryland's sentencing scheme for life imprisonment without the possibility of parole is unconstitutional because it does not limit

prosecutorial discretion in seeking such a sentence, and because it fails to provide meaningful guidance to the sentencing authority.

## Standard of Review

"An appellate court reviews without deference whether a trial court's decision was constitutional." State v. Callahan, 441 Md. 220, 234, 107 A.3d 1143, 1151 (2015).

## Law

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defen[s]e.

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." And, the Fourteenth Amendment to the United States Constitution provides, in relevant part: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law[.]"

Article 16 of the Maryland Declaration of Rights provides: "That sanguinary Laws ought to be avoided as far as it is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter." Article 21 of the Maryland Declaration of Rights provides:

- 38 -

That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defen[s]e; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

And, Article 22 of the Maryland Declaration of Rights provides: "That no man ought to be compelled to give evidence against himself in a criminal case."

In Woods, 315 Md. at 602-03, 556 A.2d at 241-42, this Court rejected the defendant's constitutional challenges to his sentence of life imprisonment without the possibility of parole. This Court stated that the defendant's argument was "rather difficult to follow[,]" but that the defendant seemed to be contending that, where life imprisonment without the possibility of parole was imposed without following the jury procedures that were required for the death penalty, the relevant statute was void for vagueness and life imprisonment without the possibility of parole was cruel and unusual punishment. Id. at 602-03, 556 A.2d at 241-42. And, in Woods, id. at 602, 556 A.2d at 241, the defendant contended that "the statute's silence on the matter of direction, limitation[,] and guidance in the request for and imposition of th[e] sentence [of life imprisonment without the possibility of parole] renders the sentence and the statutory authorization of the sentence constitutionally impermissible."

This Court readily disagreed that the sentencing scheme was ambiguous or arbitrary because it did not require the same guidelines that were used when imposing the death penalty, explaining:

Although limited here to a choice between life imprisonment or life

- 39 -

> imprisonment without [the possibility of] parole, the judge otherwise would
> be guided by the same consideration and restrictions as in the imposition of
> any sentence other than the death penalty or a sentence required to be
> mandatory. The discretion [that] a judge may exercise in sentencing has long
> been firmly established and consistently applied. In the absence of statutory
> mandates, nothing in the law requires that Guidelines sentences or principles
> be applied; they complement rather than replace the exercise of discretion by
> the trial judge.

Id. at 603, 556 A.2d at 242 (citations, brackets, and internal quotation marks omitted).

Thus, we concluded that the Maryland Constitution enabled the General Assembly to commit the choice between life imprisonment and life imprisonment without the possibility of parole "in whatever manner the General Assembly may prescribe[,]" which it committed to a trial court's discretion. Id. at 605, 603, 556 A.2d at 243, 242 (citation omitted). Indeed, we observed that the General Assembly "may, of course, circumscribe the judge's discretion as it has done with respect to the death penalty[,]" but that "the plain and unambiguous language of" the relevant statutes and Rules "leave no doubt that the [General Assembly] intended that the imposition of a life sentence without [the possibility of] parole shall remain under traditional sentencing procedures." Id. at 605, 556 A.2d at 243.

We stated that the defendant essentially argued that life imprisonment without the possibility of parole was equivalent to the death penalty, but we concluded that the two sentences were not "even relatively" equivalent. Id. at 606, 607, 556 A.2d at 243, 244. We rejected the defendant's reliance on cases in which the Supreme Court had analyzed death penalty statutes, stating that, in Furman v. Georgia, 408 U.S. 238 (1972), the Supreme Court was "compelled by the 'uniquely and unusually severe punishment' of death." Woods, 315 Md. at 605, 556 A.2d at 243 (quoting Furman, 408 U.S. at 305 (Brennan, J.,

- 40 -

concurring)).  This Court then quoted from Justice Stewart's concurring opinion in Furman,

408 U.S. at 306, in which Justice Stewart "expressed the fundamental distinction" between

the death penalty and all other sentences:

> The penalty of death differs from all other forms of criminal punishment, not
> in degree but in kind.  It is unique in its total irrevocability.  It is unique in
> its rejection of rehabilitation of the convict as a basic purpose of criminal
> justice.  And it is unique, finally, in its absolute renunciation of all that is
> embodied in our concept of humanity.

Woods, 315 Md. at 605-06, 556 A.2d at 243 (quoting Furman, 408 U.S. at 306 (Stewart,

J., concurring)).  This Court also quoted another Supreme Court case in which the Supreme

Court discussed the difference between the death penalty and other sentences:

> Death, in its finality, differs more from life imprisonment than a 100 year
> prison term differs from one of only a year or two.  Because of the qualitative
> difference, there is a corresponding difference in the need for reliability in
> the determination that death is the appropriate punishment in a specific case.

Woods, 315 Md. at 606, 556 A.2d at 243 (quoting Woodson v. North Carolina, 428 U.S.

280, 305 (1976)).  Because we rejected "the notion that a life sentence without the

possibility of parole is, even relatively, the equivalent of death itself[,]" we determined that

the Supreme Court cases relied on by the defendant, which discussed the death penalty,

were "simply inapposite."  Id. at 606-07, 556 A.2d at 243-44.

Finally, this Court concluded that the trial court followed "[a]ll the required

procedures" at the sentencing proceeding, at which the defendant was permitted to offer,

and did in actuality offer, much mitigation evidence.  Id. at 607, 556 A.2d at 244.

Accordingly, this Court determined "that the sentence of life imprisonment without [the

possibility of] parole imposed on the conviction of [the defendant] for murder in the first

degree did not offend the Constitution of the United States or the Constitution of Maryland[,]" and "[i]t neither denied him due process of law nor subjected him to cruel and unusual punishment."  Id. at 607, 556 A.2d at 244.

The Supreme Court has long recognized the difference between the death penalty and all other sentences, and the need for additional safeguards for imposition of the death penalty.  For example, in Lockett v. Ohio, 438 U.S. 586, 597, 603-04 (1978), a case in which the defendant challenged Ohio's death penalty statute on a number of grounds, the Supreme Court stated:

> Although legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases, the plurality opinion in *Woodson*, after reviewing the historical repudiation of mandatory sentencing in capital cases, concluded that
>
> "in capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death."

(Quoting Woodson, 428 U.S. at 304) (ellipsis in original).

And, in Harmelin v. Michigan, 501 U.S. 957, 961, 994 (1991), a case in which a defendant was convicted of possession of 672 grams of cocaine and sentenced to a mandatory sentence of life imprisonment without the possibility of parole, the Supreme Court rejected the defendant's contention that his sentence violated the Eighth Amendment because "it is 'cruel and unusual' to impose a mandatory sentence of such severity, without any consideration of so-called mitigating factors such as, in his case, the fact that he had no prior felony convictions."  The Supreme Court explained that, although "[s]evere,

mandatory penalties may be cruel, [] they are not unusual in the constitutional sense[.]" Id. at 994. The Supreme Court was unpersuaded by the defendant's "required mitigation" claim and declined to extend the "so-called 'individualized capital-sentencing doctrine,' to an 'individualized mandatory life in prison without [the possibility of] parole sentencing doctrine.'" Id. at 995 (citation omitted). The Supreme Court explained: "Our cases creating and clarifying the individualized capital sentencing doctrine have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." Id. (citations and internal quotation marks omitted). The Supreme Court concluded: "We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further." Id. at 996.

In Apprendi v. New Jersey, 530 U.S. 466, 468-69 (2000), decided after this Court's opinion in Woods, the Supreme Court considered "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years[, *i.e.*, an extended term of imprisonment under the hate crime law of New Jersey,] be made by a jury on the basis of proof beyond a reasonable doubt." As to that question, the Supreme Court concluded:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule . . . : It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.

Id. at 490 (citation, brackets, and internal quotation marks omitted). In so concluding, the

Supreme Court also explained:

> [N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case. . . . [O]ur periodic recognition of judges' broad discretion in sentencing . . . has been regularly accompanied by the qualification that that discretion was bound by the range of sentencing options prescribed by the legislature.

Id. at 481 (emphasis in original) (citations omitted). The Supreme Court noted, however:

> If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached.

Id. at 484.

In Borchardt v. State, 367 Md. 91, 125, 786 A.2d 631, 651 (2001), this Court analyzed Apprendi at length and concluded that Apprendi did not apply to the imposition of the death penalty or life imprisonment without the possibility of parole, explaining:

> Life [imprisonment] without [the possibility of] parole and death obviously are enhanced punishments, just as, in sentencing for any crime, the highest penalty allowed is an enhancement over a lesser penalty allowed—20 years is an enhancement over 10 years, one year is an enhancement over a fine or probation. The point . . . is that both life [imprisonment] without [the possibility of] parole and death are part of the sentencing range authorized by the [General Assembly] for the crime of first degree murder. Unlike the situation in *Apprendi*, the death sentence is not in excess of the maximum statutory penalty for the offense. . . . [L]ife [imprisonment] without [the possibility of] parole and death are within the range of penalties allowed by the [General Assembly] upon a conviction for first degree murder.

**Analysis**

Here, we conclude that Maryland's sentencing scheme for life imprisonment without the possibility of parole does not violate the United States Constitution or the Maryland Declaration of Rights, and that neither the United States Constitution nor the Maryland Declaration of Rights provides a defendant with the right to have a jury determine the levying of a sentence of life imprisonment without the possibility of parole. Stated otherwise, both the United States Constitution and the Maryland Declaration of Rights permit imprisonment without the possibility of parole to be imposed in the same manner as every other sentence except the death penalty. As an initial matter, we note that, in Woods, 315 Md. at 605, 603, 556 A.2d at 243, 242, this Court unequivocally held that the Maryland Constitution enabled the General Assembly to commit the choice between life imprisonment and life imprisonment without the possibility of parole to a trial court's discretion. Indeed, in Woods, id. at 602, 556 A.2d at 241, the defendant contended that "the statute's silence on the matter of direction, limitation[,] and guidance in the request for and imposition of th[e] sentence [of life imprisonment without the possibility of parole] renders the sentence and the statutory authorization of the sentence constitutionally impermissible"—the very thing that Bellard contends in this case. As we did in Woods, id. at 603, 605, 556 A.2d at 242, 243, we expressly reject Bellard's contention and reiterate that, in the absence of statutory guidelines explicitly limiting a trial court's discretion, the imposition of a sentence of life imprisonment without the possibility of parole rests with the trial court's discretion and is subject to traditional sentencing procedures.

In Woods, id. at 606, 607, 556 A.2d at 243, 244, this Court rejected the notion that

imposing life imprisonment without the possibility of parole requires the same level of elaborate procedure that imposing the death penalty requires, given that the death penalty and life imprisonment without the possibility of parole are not even remotely equivalent. Similarly, in this case, we reject Bellard's argument that the sentencing scheme for life imprisonment without the possibility of parole is unconstitutional because there are no guidelines regarding what considerations are relevant in determining whether to impose life imprisonment or life imprisonment without the possibility of parole. In our view, Bellard's argument is a variant of the argument that we rejected in Woods—namely, that imposing a sentence of life imprisonment without the possibility of parole requires certain procedure and guidelines akin to what was in place in this State with respect to the death penalty. As the Supreme Court has acknowledged, the death penalty differs from all other sentences, including life imprisonment without the possibility of parole. See Furman, 408 U.S. at 306 (Stewart, J., concurring); Woodson, 428 U.S. at 305; Lockett, 438 U.S. at 597; Harmelin, 501 U.S. at 995-96. And, under the United States Constitution, the type of individualized sentencing that is required when imposing the death penalty has not been expanded to other sentences, including mandatory life imprisonment without the possibility of parole. See Harmelin, 501 U.S. at 995-96. In other words, individualized sentencing, and all of the procedures and safeguards that accompany it, are not required for sentences other than the death penalty. Accordingly, we reaffirm our constitutional holdings in Woods, and conclude once again that Maryland's statutory scheme for imposing life imprisonment without the possibility of parole does not offend the Maryland

Declaration of Rights or the United States Constitution.[8]

Similarly, we are unswayed by Bellard's third contention—that Maryland's sentencing scheme is unconstitutional because the relevant statutes do not require a trial court to determine that the State has established the existence of any factors that justify life imprisonment without the possibility of parole and do not require a jury to find, beyond a reasonable doubt, the existence of any such factors. Bellard's reliance on Apprendi in support of this contention is misplaced. Apprendi is plainly a different case than this; it involved circumstances in which facts were required to be proven to increase the penalty for a crime beyond the prescribed statutory maximum; specifically, in that case, under New Jersey's hate crime law, the prosecution could seek an extended term of imprisonment beyond the statutory range of imprisonment authorized for the offense at issue. See Apprendi, 530 U.S. at 468-69, 490. And, as to any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, the Supreme Court held that such a fact "must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. The key difference in this case, however, is that, in

_____

[8]Again, we acknowledge that Woods was decided prior to the General Assembly's repeal of the death penalty, and the statutory scheme that existed at that time, which included the death penalty, was obviously different than the current statutory scheme, which does not include the death penalty. However, in Woods, 315 Md. at 598, 556 A.2d at 239, the State did not seek the death penalty and sought only life imprisonment without the possibility of parole—i.e., the death penalty was not at issue in the case—and, in Woods, the defendant specifically challenged the statutory scheme for life imprisonment without the possibility of parole. The principles set forth in Woods have not been abrogated in any subsequent decision of this Court. As such, we determine that our constitutional holdings in Woods with respect to the statutory scheme for life imprisonment without the possibility of parole apply with equal force even though the death penalty has been repealed since Woods was decided.

Maryland, life imprisonment without the possibility of parole is not a penalty beyond the prescribed statutory maximum for first-degree murder—it is the statutory maximum. Thus, in this case, no fact must be established to increase the penalty for first-degree murder beyond the statutory maximum; the statutory maximum penalty—life imprisonment without the possibility of parole—had been sought by the State and imposed by the circuit court.

Significantly, in Apprendi, id. at 481, the Supreme Court recognized that it is permissible for trial courts to exercise broad discretion when "imposing sentence within statutory limits in the individual case[,]" and such discretion is bound only "by the range of sentencing options prescribed by the legislature." (Citations and emphasis omitted). That is exactly what occurred here—the State sought the maximum penalty permitted by statute, see CR § 2-201(b)(1)(i), namely, life imprisonment without the possibility of parole, and the circuit court exercised its broad discretion to impose the sentence sought, which was prescribed by the General Assembly to be the maximum penalty for first-degree murder. Our reading of Apprendi is confirmed by this Court's analysis in Borchardt, 367 Md. at 125, 786 A.2d at 651, in which we determined that, although life imprisonment without the possibility of parole is, in a sense, an "enhanced" punishment, it is within the range of penalties permitted by the General Assembly upon a conviction for first-degree murder.

In sum, we conclude that Bellard's sentence of life imprisonment without the possibility of parole, as imposed by the circuit court, is statutorily and constitutionally valid, and Maryland's sentencing scheme for life imprisonment without the possibility of

parole does not deny due process of law or otherwise subject a defendant to cruel and

unusual punishment.[9]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**

---

[9]We observe that our holding in this case is consistent with at least one other jurisdiction that has a sentencing scheme for life imprisonment without the possibility of parole similar to Maryland's. In Teniente v. State, 169 P.3d 512, 536-38 (Wyo. 2007), the Supreme Court of Wyoming held that the sentencing scheme for life imprisonment without the possibility of parole was not unconstitutionally vague, either on its face or as applied to the defendant. The statute at issue provided, in relevant part, that in the case of a person convicted of first-degree murder, where the State has not sought the death penalty, "the judge shall determine the sentence of life imprisonment without the possibility of parole or life imprisonment taking into consideration any negotiated plea agreement and any evidence relevant to a determination of sentence which the court deems to have probative value." Wyo. Stat. Ann. § 6-2-101(c) (2017). In Teniente, 169 P.3d at 535, the defendant contended, among other things, that the statute was unconstitutionally vague on its face because it lacked guidelines for imposing a sentence of life imprisonment without the possibility of parole and that the sentence was an enhanced punishment that required additional findings by a jury rather than a trial court. The Supreme Court of Wyoming rejected those arguments, and observed that, because the penalty of life imprisonment without the possibility of parole is one "for which no further fact[-]finding is required once a jury has determined that the crime of first degree murder has been proved[,]" the concerns addressed in Apprendi "are not implicated." Teniente, 169 P.3d at 536 (citation and internal quotation marks omitted). Additionally, the Supreme Court of Wyoming determined that life imprisonment without the possibility of parole was not a sentence enhancement for which further fact-finding was required, but instead was the upper limit of the range of non-capital punishment permissible under the statute. See id. at 537. Citing Harmelin, the Supreme Court of Wyoming further explained: "[A] sentence of life in prison without [the possibility of] parole does not require the same degree of channeling of discretion or individualization of the ultimate sentencing decision as attends imposition of the death penalty." Teniente, 169 P.3d at 537. And, the Supreme Court of Wyoming stated that "sentencing by its very nature requires only the informed and reasonable exercise of discretion on the part of the [trial] court." Id.

- 49 -